Mr. Ferguson, you may proceed. Good morning, Your Honors. May it please the Court. My name is Franklin Ferguson. I'm counsel on behalf of the appellant. I live in California. I came from Illinois. The difference is that I know what freezing is as opposed to chilling. This case is going to require the Court to understand that chilling and freezing are two different things. The response wants you to believe that the fact that Ms. Kando was able to overcome the efforts to chill her speech, that she wasn't frozen, that she has nothing to complain about. In essence, however, we believe that the First Amendment can be chilled, and it's important to understand that we have brought a case here that is not about retaliation, but rather about interference. I make that distinction because interference, I believe, allows the Court to look at the totality of the circumstances. What did the First Respondents do to discourage her from coming again? Ms. Kando made a complaint. She made a petition to redress her grievances against the government. The government reacted to that complaint, and it's not a function of retaliation, but rather of interference and chilling her ability to come back again. What the Respondents did... I'm not sure I quite understand the difference between interference and retaliation. Yes, Your Honor. These are just to argue retaliation, right? Say again? It's easier just to argue retaliation. That's not our case, though, Your Honor. The plaintiff gets to choose her theory, and what happens here is interference is important because it allows us to look at what happened before the actual call. She calls in to complain. We can look at Officer Organa's behavior and how he... Well, you'd look at all that for retaliation. Yes, Your Honor, but again, interference allows us to look at the entire thing, even the behavior of the false evidence, to say that we now have the Respondents actively engaged in discouraging a citizen from complaining, from petitioning the government, and that's very important. It allows us to also avoid the argument that you have an after-the-fact argument, in other words, that you can't have Morgana serving as a deterrent because it's after the fact. Interference allows us to look at the whole picture and say, what did the Respondents do to discourage Ms. Cano from complaining? Not only did Chief Lynn send Officer Taylor Law back to Ms. Cano's residence. She could have mailed the notice. She could have called and said, I'm coming over. But instead, he chose the most invasive possible means of letting her know that, hey, you're a citizen. And that was done for a purpose, to interfere with her rights. I can't argue with the Court in terms of perhaps it works the same way under the retaliation standard, but I do know that retaliation allows the Respondents to say, you know what, you can't retaliate because this happened before the protected activity. With interference, we can look at the whole picture and say, we can say with confidence that the Respondents acted in a manner to discourage Ms. Cano from complaining. You're going to complain against us? We'll see how you like this. So I thought, and maybe this is part of your case, but could you focus on the initial call? So your client calls Officer Mangana and says, I want the complaint form. And that call results in a sort of unpleasant conversation. And maybe you can sort of take me through, like, what is the significance of that call for your case? Thank you. That is the citizen trying to petition the government for restricted grievances. And what Magana does is he says, you don't have a grievance. He says he discourages it from calling. And this is very significant because if you have people who are designed to accept the petitions themselves, discouraging citizens from doing so, that can't be anything other than chilling the exercise of free speech. And what was the discouragement? Because there's an email from your client that says, well, he threatened to sue me. But then in her deposition, it seemed like she avoided saying that. So what is your position about what he did to discourage her? That would be a factual question that is best for the fact. But in this instance, we do have Ms. Kando saying, I tried to file my complaint. I got a very hostile response from Officer Magana. The fact that Ms. Kando was successful ultimately in going around him and filing a physical written complaint does not alleviate the problem here. Well, no, I think you're absolutely right about that. It doesn't matter whether she, in fact, was deterred. What matters is whether there was something that would deter a reasonable person. But what is it that you allege specifically was the thing that he did or said that would deter a reasonable person? He told her that she did not have anything to complain about. He told her that she should be the one sued. He essentially was aggressive towards the person calling for the purposes of complaining. So it's your view that he did, in fact, threaten to sue her? Yes. And what is – I mean, this is on summary judgment, not just a motion to dismiss. So what's the evidence that creates at least a dispute of fact on that? Is it just the email or is there something else? We have the email. You have her testimony. But her testimony does not say that. Her testimony – I'm looking at year 735 in her deposition. She's asked, did he discourage you from filing a complaint? Well, yeah, he told me we could go to court and fight it out. And, I mean, maybe that means – he said he would sue me. Maybe that just means, like, the way she would be complaining was in court. I thought it was sort of – it seemed like a calculated ambiguity there. I understand, Your Honor. However, she answered the question that was given to her. And so the way she had framed the issue before in the complaint was that he threatened to sue her. And when she was asked about it, she described it as you've just indicated. I didn't do so before, Your Honor, but I'd like to reserve six minutes of my time for rebuttal. The Respondent's Brief does two things. It tracks the language of the district court, and it adopts the language. It essentially says the district court is right. And it does so in several places. That's a problem for the Respondent because, in essence, the district court uses the wrong standard. The district court, in every term, every possible interpretation of fact, views the evidence in light most favorable to the moving party. They should have done the opposite. That's a very, very important thing because here we're saying we have a dispute of fact, and we do have the plaintiff who offers evidence in dispute on every single point. And the fact that the court did not allow or discourage or look down upon even Ms. Kendall's use of her own deposition testimony is not what the law says. The law says the opposite. And that's one of the reasons it should be reversed. One of the things I want to address at this point, Your Honor, is the issue of qualified immunity. Essentially, the question is going to be, did these individuals understand what they were doing was wrong at the time they did it? And did they have any way of knowing so? Magana knew that his job was to receive complaints, not to discourage them. There's no question about it. He was trained to do so. The biggest part of this case, I believe, is with the 911 operator, Officer, I mean, sorry, Ms. Klute. Ms. Klute understands two things. She was trained to understand that 422 has to be unconditional. She says that in her testimony, in her deposition. She also understands that her job is to report what happened. Officer Klute, in my view, Your Honor, takes the role of someone who wants to be inserted into the matter,  and she specifically omits evidence for the purpose of what happened, which is the officers take this to another level. But for the actions of Sergeant Tulio, these behaviors, these activities could result in a tragic event. So she, I mean, she omits the, I'm not sure I quite want to call it a retraction, but the purported retraction of the threat from her report. But then the very same day when she's talking to the police officers putting together the report, she includes that. So what evidence is there that would allow a trier of fact to conclude that the initial omission was deliberate? If she was trying to hide that, she didn't try very hard. Because in her phone calls to the officers, she says only the part that incriminates Ms. Kando. She does not talk about the fact that she herself was the person who first introduced the idea of there being an intruder inside Ms. Kando's residence. This is a conversation, it's a dialogue. The 911 operator is talking to Ms. Kando. The 911 operator is the one who suggests, is he in your home, is he inside, did he get inside? But these are things that Ms. Kando had not contemplated until the 911 operator interjected those things. And to not include the entirety of that conversation, to not tell the peace officers that this is a conversation, not just Ms. Kando saying X, Y, and Z. It's a conversation in which Ms. Kloot, who's not an officer, Ms. Kloot, does in fact introduce the concept of home invasion to Ms. Kando. That, in totality, represents the need, requires, to try to see the whole picture, not just a small piece. And it is important that Ms. Kloot knew that it had to be unconditional. And she admits in her deposition that that's important. She was trained that that's important. And she does not include that information in the information that she wants to give. I see I have less than five minutes. I'll have to preserve my time for rebuttal. You may. Thank you. All right, and Mr. Peters? Good morning, Your Honors. May it please the Court. My name is Matthew Peters. I appear on behalf of Appellees. I would first like to address, I will address Appellant's arguments in the order that they were presented in the brief. First, Appellant contends that the District Court improperly decided disputed facts in Appellee's favor. Yet, it's unclear from the opening brief which disputed facts were incorrectly decided in Appellee's favor. The only disputes there appear to be are Ms. Kando's, the Appellant's attempts to rewrite the evidence, suggesting that she conditioned the threat upon a home invasion, or that she suggested that the threat was conditioned on Ms. Taylor Law actually entering her home. That's just not in the record. That was not information known to the Appellees at the time the threat was communicated. And White v. Pauley, the Supreme Court makes clear that for purposes of Section 1983 liability, the Court considers only the facts and circumstances known to the government officials at the time their actions are taken. How does that relate to her First Amendment claim? Her First Amendment retaliation claim. Certainly. The First Amendment claim does not pertain to the actual 9-1-1 audio, the call where the threat was made. My understanding is that the First Amendment interference or retaliation claims are based on two actions. One by Magana in having some sort of a hostile argument with her when she initially calls to make a complaint or request information on how to make a complaint. The second instance of interference or retaliation is Officer Taylor Law posting a notice of citation on her door. And those two actions preceded the 9-1-1 call where the threat was made. And so, for purposes of the First Amendment analysis, Your Honor is correct. That information would not be pertinent to that inquiry. So, what's your answer to the First Amendment claim based on the call with Magana? So, her allegation is, I called up to complain. That's petitioning protected by the First Amendment. And in response, he said, if you go forward with complaining, maybe not the conditional party. At some point in the call, he threatens to sue her. And threatening to sue someone because they're complaining about the government. Why isn't that just a straightforward First Amendment retaliation? Well, Your Honor, the appellant's deposition testimony when asked, how did Magana discourage you from filing a complaint? Condestated, he told me we could go to court and fight it out. And that he said a bunch. I don't want to misquote him. I don't want to be called a liar. But it was argumentative and aggressive for sure. And so, appellants take that testimony and leave the court to believe that he was threatening to sue her for making a complaint. A citizen complaint is not litigated in court. And presumably, Magana and appellant know this. I don't know the entire – go ahead, Your Honor. I was just going to say, when Magana was deposed, what did he say about this verbal encounter? Your Honor, I believe he made no such representations that a statement like that was made. Magana was trying to explain to her the basis for her receiving a citation that day, namely for having her dog off-leash in violation of the municipal code. And that they were more discussing the encounter itself and the underlying basis for the citation rather than the complaint form. So, her testimony, I mean, the part you just read is ambiguous. Although, I mean, the fact that you – the fact which you raised that a citizen complaint is not litigated in court kind of suggests that the reference to going to court, like, must be a – well, given that a citizen complaint is not litigated in court, what could he have meant by talking about going to court other than that he might sue her? And, Your Honor, we have to rely on Ms. Kanda's testimony and give her, you know, all inferences in her favor. But I presume the context of the conversation was Ms. Kanda saying, I'm going to sue you, and Magana saying, well, we can litigate that in court. But then we also have her email, which says, you know, I called today to file a complaint, and another officer, which would be Magana, again insulted and harassed me by phone, saying he wanted to go to court and sue me. So that's – the deposition is ambiguous, but this is not ambiguous. So what do we do with that? Well, Your Honor, I would, you know, I would look to the fact that the – I know that Ms. Kanda ultimately made her formal complaint against the department, so it certainly didn't chill her speech by any stretch. In fact, after the conversation, within hours after the conversation with Magana, Ms. Kanda sent that email, and then subsequently the next day filed the formal complaint. So if any way, you know, rather than chill her speech, it seemed to embolden her. Isn't the test whether it would chill a person of ordinary firmness, right? I mean, maybe she's unusually resolute, right? It doesn't really matter whether she, you know, personally was chilled or not, does it? And that is correct, Your Honor. And at summary judgment, it appeared that appellant was arguing that the protected activity was the filing of the formal complaint. And we argued that the allegedly retaliatory conduct, i.e. argument with Kanda, occurred before, not after Kanda's protected conduct, making it impossible to show the but-for causation that's required for a First Amendment claim. But nevertheless, Your Honor, as appellant's counsel alluded to, the alternative argument of qualified immunity. Appellants have not pointed to any case. They have not met their burden in showing that Officer Magana's conduct violated any clearly established law. And so we would submit that if the court does find that this conduct, arguing, threatening to sue, would chill a person of ordinary sensibilities, then we would contend that he is nevertheless entitled to qualified immunity. And what about our decision in White against Lee, right, where it wasn't exactly a threat of litigation, but it was a threatened investigation by, I think in that case, the Department of Housing and Urban Development against people who had petitioned the government. And we said that that was unlawful First Amendment retaliation. Why doesn't that establish the principle? Your Honor, I'm not quite familiar with all the facts of that case. I would be happy to submit supplemental briefing if the court so desires. All right. I don't think that's necessary. And I'll briefly touch on the allegations made against Officer Taylor Law. I believe this one is a more clear-cut decision here. Ms. Taylor Law merely posted a notice at the direction of her supervisor. And I believe that this can be categorically considered a retaliation claim because the protected speech had already occurred. And as Appellant's counsel points out, the interference did not occur during the course of the protected speech. So Ms. Kando admits that Taylor Law had no retaliatory motive, stating it did not bother Officer Taylor Law that Ms. Kando was complaining because people have a right to complain. So by merely posting the citation at the instruction of her supervisor, based on his belief that that was the proper procedure in accordance with city law, there's legitimate non-retaliatory, non-adverse justifications for Taylor Law's actions. And we would submit that Ms. Kando, therefore, cannot establish that any alleged adverse action was caused by any retaliatory motive. I would next like to address briefly what appears to be a fabrication of evidence claim, but based on counsel's arguments to this court as well as to his briefing and the cases he cites, Ms. Kando is really alleging a suppression of evidence claim, a Brady claim. And appellees would submit that there was no fabrication of evidence, there was no withholding of exculpatory information. Ms. Klute merely reported the gist of what she had remembered hearing from Ms. Kando. Thereafter, a more comprehensive investigation was undertaken. The audio file was supplied to the detective leading that investigation. That audio file was provided to the district attorney, who ultimately filed charges. And I'm unaware of any case where a Brady claim can be premised on the mere initiation of an investigation. I am familiar with this court's holding that a Brady claim can support a claim where charges were filed, but I'm aware of no such case where a deliberate suppression of evidence claim can support a claim that an investigation was wrongfully initiated. And as to the briefly-touched-on-the-false-arrest claim, we would submit that a threat need not be unconditional, and California courts are clear on that point. There is nowhere in the record does Ms. Kando condition her threat upon a home invasion. This is a rewriting the testimony, essentially. We believe that it was unequivocal and specific enough to create a gravity of purpose, and that her statements conveyed a specific intent that the threat be conveyed to the victim. And if the court has any other questions, I will yield my time. Thank you. Thank you very much. Mr. Ferguson, you have about five minutes, I think. Thank you. In terms of the false evidence, omission is the very essence of creating false evidence, because Ms. Klute was trained and she understood that the entirety of the conversation was important. Ms. Klute engaged in this discussion, and she specifically left out the parts which would help exonerate or help to put in better context Ms. Kando's behavior. I want to turn to Officer Conrad's behavior. Officer Conrad is the officer who first obtained the arrest warrant with the D.A., and there's a question of fact. The D.A., when she was actually deposed, did not state that she definitely viewed, listened to 9-1-1 tape prior to agreeing with or signing the arrest warrant for Officer Conrad. Instead, it's ambiguous, and she's asked several questions directly on that point. And a trial fact could conclude that she did not, in fact, see the entire 9-1-1 or hear the entire 9-1-1 audio before she made that decision. Conrad knew, and this is very important, Conrad specifically knew that he did not believe, at the time he went to receive, to request, rather, a search warrant, he did not believe that PC-4222 had been committed. His own words in his deposition, he did not speak with the victim of 4222 as well. So Conrad creates a scenario which ultimately results in a squad team coming to Ms. Kando's residence, and the only reason that they did not burst the perimeter of that residence was because Sergeant Tulio decided not to do so. He didn't know what was on the other side of the door, he didn't do it. But for his actions, this would have resulted in possibly very tragic behavior. Counsel for Respondent has made clear why it's important that we frame the issues as interference, because it precludes the ability for Respondent to argue or to make the argument to court to find that one act has to precede another act. Instead, the court can look at the totality and say, look, what did Chief Lynn do? What did Ms. Kloot do? Ms. Kloot has a long conversation, which is in actually the Respondent's brief, discussion with Ms. Kando, and she does not put that information into her conversation with the officers or in her report, ultimately. That's her choice, and she knows that that choice was made based upon her training and based upon her behavior. I want to focus now, if the Court's permission, on the fact that the court, the trial court, used the wrong standard, and it did so the entire time, it did so admittedly. In the record, the court would find the 1EER334, the court was supposed to take the opposite view of what it did. The court was supposed to err on the side of any questions of doubt relative to Ms. Kando's perspective. It did the opposite. It penalized her for using her own dample testimony in rebuttal of the Sumner Jesuit motion. That was the wrong standard to apply. Chilling versus freezing is what I want to end with, Your Honor, because I think it's critically important. I know, again, chilling is precluded by the First Amendment. You're not supposed to chill people's speech. They are trying now to get the benefit of trying to freeze her out, trying to keep her from exercising her rights. And yet, because she succeeded, they say, well, you weren't chilled. And the court points out, you have a person, and in this case, Ms. Kando is a person of extraordinary tenacity, bravery, and courage. And she is a person who says, you know what you did to me? You can't spit on me and tell me it's raining. That's not okay. And I'd like the court to please take a look at that in the context, understand that what's at stake here is the president of a respondent, Ms. Bally, saying, we can do what we want to do. You want to challenge us? Oh, good luck with that. We have the power of the police. We have the power of the courts. We can make you jump through hoops. Oh, and that reminds me, Officer Magana. He didn't give her the forms. He didn't give her what she came to receive, to petition. She did it on her own. I see my time has ended. I'd like to thank the court for its time. I appreciate the opportunity to do some justice today. Thank you. Thank you, counsel. We thank both counsel for their arguments, and the case is submitted.
judges: PAEZ, MILLER, VANDYKE